UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| COMPETITIVE ENTERPRISE INSTITUTE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-1532 (RMC) |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| Defendant. | ) ) | |

# OPINION

Administrators of the Environmental Protection Agency have made prolific use of government-issued smart phones to send thousands of text messages. Based on its knowledge of this practice, Competitive Enterprise Institute submitted two requests under the Freedom of Information Act for certain officials' text messages, on the assumption that some of those messages would contain substantive agency communications. The Agency responded that it identified no records responsive to these requests because the text messages were not "records" that the Agency was required to retain under the Federal Records Act. Competitive Enterprise Institute challenges that determination and the Environmental Protection Agency moves to dismiss for failure to state a claim. For the reasons set forth below, the Court will grant in part and deny in part the Agency's motion.

## I. FACTS

Competitive Enterprise Institute (CEI) is an educational and public policy research institute in Washington, D.C., which is focused, in part, on the development of economically sustainable environmental policy. Am. Compl. [Dkt. 18] ¶ 14. Because of this

focus, CEI is particularly interested in policy initiatives that are considered or approved by the Environmental Protection Agency (EPA), and it regularly seeks public records related to the EPA's development of environmental policy. To access this information, "CEI regularly files, and will continue to file" disclosure requests with EPA under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. *Id.*

CEI challenges EPA's alleged practice of routinely destroying agency text messages as violative of the Federal Records Act (FRA), 44 U.S.C. §§ 2101 *et seq.* The Court will first describe the statutory framework established under FRA, and then review the specific allegations involved in this case.

### A. Federal Records Act

Congress has enacted various statutory provisions, collectively known as the Federal Records Act, to ensure the accurate and complete documentation of federal records and to encourage efficient records management practices amongst federal agencies.[1] *See* 44 U.S.C. § 2902. To effectuate these purposes, FRA requires "[t]he head of each Federal agency [to] make and preserve records containing . . . documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency . . . ." *Id.* § 3101. Agency heads also are required to establish and maintain an active records management program, *id.* § 3102, and to establish safeguards against the destruction of records that the agency head determines should be preserved, *id.* § 3105.

---

[1] FRA originated with the 1943 Disposal of Records Act, ch. 192, 57 Stat. 380, and the Federal Records Act of 1950, ch. 849, 64 Stat. 583. Those acts were amended by the Government Records Disposal Amendments of 1970, 84 Stat. 320, the Federal Records Management Amendments of 1976, 90 Stat. 2723, and the National Archives and Records Administration Act of 1984, 98 Stat. 2280.

FRA establishes specific tasks for the National Archivist in the records retention process. First, the statute requires the Archivist to provide guidance and assistance to federal agencies to ensure adequate and proper documentation of the policies and transactions of the federal government. *Id.* § 2904(a). The Archivist is further directed to "promulgate standards, procedures, and guidelines with respect to records management," *id.* § 2904(c)(1), and to "conduct inspections or surveys of the records and the records management programs and practices within and between Federal agencies," *id.* § 2904(c)(7).

Because FRA is primarily directed at the preservation of federal records, the crux of the statute lies in its disposal provisions. Specifically, the statute limits an agency's ability to unilaterally dispose of "records," which are defined as:

> [A]ll books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them.

*Id.* § 3301.

A document that qualifies as a federal record may not be discarded except as provided by statute. Both the Archivist and agency heads participate in the initial decision to preserve or remove a federal record. *See id.* § 3314 (providing that no federal record may be "alienated or destroyed" except as provided under the disposal provisions of FRA). Pursuant to this process, an agency typically submits a list of records to the Archivist that the agency proposes to discard. *Id.* § 3303. If the Archivist agrees that the records lack "sufficient administrative, legal, research, or other value to warrant their continued preservation," *id.*

3

§ 3303a, the Archivist may authorize the disposal of records after providing an opportunity for notice and comment. Upon the Archivist's final approval, the agency is thereafter permitted to dispose of the records.

However, FRA and regulations promulgated thereunder also provide for the recurring disposal of certain categories of records. For instance, the head of an agency may submit to the Archivist "schedules proposing the disposal after the lapse of specified periods of time of records . . . that . . . have accumulated in the custody of the agency or may accumulate after the submission of the schedules and apparently will not . . . have sufficient administrative, legal, research, or other value to warrant their further preservation by the Government." *Id.* § 3303(3). Accordingly, federal records either are classified as permanent records, which must be transferred to the National Archives and Records Administration (NARA) for preservation, or temporary records, which may be destroyed after a specified period of time. *See* 36 C.F.R. §§ 1225.14, 1225.16.

In addition, Congress has established a detailed enforcement scheme to remedy violations of FRA. The statute imposes notification requirements on the heads of agencies and the Archivist,[2] and sets forth corrective action to be taken if there is any unlawful destruction of federal records. The head of an agency

> shall notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, or destruction of records in the custody of the agency of which [she] is the head that shall come to [her] attention, and with the assistance of the Archivist shall initiate action through the Attorney General for the recovery

---

[2] FRA imposes corresponding notification requirements on the Archivist and agency heads. If either the Archivist or an agency head becomes aware of the improper destruction of federal records, he or she must notify the other. *See* 44 U.S.C. §§ 2905(a) & 3106. Because CEI's Amended Complaint alleges that EPA Administrators failed to notify the Archivist of the unlawful destruction of federal records, the Court focuses on the statutory provisions that apply to the head of an agency.

4

of records [she] knows or has reason to believe have been unlawfully removed from [her] agency, or from another Federal agency whose records have been transferred to [her] legal custody.

*Id.* § 3106. If the agency head does not initiate an action within a reasonable time after being notified of the unlawful destruction of federal records, "the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." *Id.* "Notably, the FRA specifies only these enforcement roles and does not provide an express cause of action for private litigants to redress the unlawful removal of agency records." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 109 (D.D.C. 2007).

### B. FOIA Requests

The instant dispute stems from two FOIA requests submitted by CEI for certain text messages sent by former EPA Assistant Administrator Gina McCarthy and former EPA Administrator Lisa Jackson.[3] While these FOIA requests are not directly at issue here, they provide useful background for this factual dispute and the legal claims asserted against EPA. As a result, the Court describes the requests in detail below.

In 2013, CEI believed that a senior EPA official had warned then-Assistant Administrator McCarthy to refrain from sending text messages regarding official EPA business on days when she was scheduled to testify before Congress. Am. Compl. ¶ 10. Based on that information, on April 26, 2013, CEI submitted a FOIA request seeking copies of "all text messages sent by Assistant Administrator . . . Gina McCarthy on a mobile telephone provided for

---

[3] Gina McCarthy was the former Assistant Administrator for EPA's Office of Air and Radiation, and Lisa Jackson was the Administrator of EPA. In December of 2012, Lisa Jackson announced her resignation; she has since been succeeded by Gina McCarthy.

her use by the Agency" on eighteen specific dates from 2009 to 2012.[4]  Am. Compl. ¶ 22.  EPA responded by letter dated May 9, 2013, which stated that the Agency had received the request and would respond at an unspecified future date.  CEI did not receive a substantive response from EPA within the statutory twenty-day deadline, *see* 5 U.S.C. § 552(a)(6)(A)(i), and filed suit against EPA on May 29, 2013.  *See Competitive Enterprise Institute v. EPA*, Civ. No. 13-779 (BAH) (D.D.C., filed May 29, 2013).  Thereafter, EPA provided a "no records" response, stating that it was unable to locate any text messages responsive to the FOIA request.  CEI then filed a stipulation of dismissal without prejudice on September 13, 2013.

CEI submitted a separate FOIA request to EPA on August 19, 2013, which requested copies of "all EPA-related text messages sent and/or received by Lisa P. Jackson on May 27, 2010."[5]  Am. Compl. ¶ 27.  This FOIA request was drafted to include text messages in which former EPA Administrator Lisa Jackson reportedly discussed potential green-jobs opportunities with an unidentified "cotton absorbent company."  *Id.* ¶ 28.  CEI learned of these text messages after EPA released a copy of an email in which a private citizen recounted that he or she "had txt'd this am" with then-Administrator Lisa Jackson.  Compl. [Dkt. 1] ¶ 26, n.19.  CEI alleges that this text message either discusses or relates to EPA's substantive involvement in the "clean-up efforts surrounding the Deepwater Horizon drilling platform explosion and oil leak in the Gulf of Mexico," and that the cotton absorbent company "sought to promote its purportedly environmentally-friendly products to the EPA for use in connection with the cleanup."  Am. Compl. ¶ 28.

---

[4] EPA identified this FOIA request as EPA-HQ-2013-006005.  *See* Am. Compl. ¶ 23.

[5] EPA identified this FOIA request as EPA-HQ-2013-009235.  *See* Am. Compl. ¶ 29.

On September 18, 2013, EPA issued a "no records" response to the FOIA request. Eric E. Wachter, Director of EPA's Office of the Executive Secretariat, wrote that:

> [n]ot all documents created by government employees are subject to preservation under the Federal Records Act. As with all electronic communication, EPA employees are required to determine whether text messages are record material and to preserve as appropriate. Indeed, the text messages described in the example you provided certainly suggest nonrecord material not subject to the Federal Records Act.

Mot. to Dismiss [Dkt. 10], Ex. 4 (Sept. 18, 2013 Wachter Letter) [Dkt. 10-6] at 2.

Thereafter, EPA received additional FOIA requests from CEI for phone bills documenting then-Assistant Administrator Gina McCarthy's text messages. In response to those requests, EPA produced documents revealing that EPA Administrators sent and received thousands of text messages on EPA-issued handheld devices. One such document disclosed "certain metadata showing 5,392 text messages sent or received by Ms. McCarthy during billing periods from July 2009 to July 2012." Am. Compl. ¶ 26, n.12.

### C. Procedural History

CEI filed its Complaint on October 3, 2013, "to enjoin and prevent the destruction of certain EPA text message transcripts . . . by EPA pursuant to a policy and practice that violates [FOIA] . . . and the [FRA]." Compl. ¶ 1. CEI alleges that EPA officials use text messaging as an alternative to email, and that both text messages and email contain records of EPA's official functions. Despite these similar functionalities, however, CEI avers that EPA has adopted different records retention policies for text messages and emails, even though "no inherent substantive distinction exists." Am. Compl. ¶ 7. In essence, CEI alleges that EPA has an unstated practice of allowing employees to destroy sole copies of records sent or received by text message. This alleged practice contravenes EPA's Interim Records Management Policy,

7

which provides that users of any transient technologies are "responsible for ensuring that [instant messages] that result in the creation of a federal record are saved for Federal Records Act purposes." Mot. to Dismiss, Ex. 3 (Interim Records Management Policy) [Dkt. 10-5] at 3. Conceding that EPA has some discretion to engage in a case-by-case analysis of what constitutes a "record," CEI maintains that the Agency is not allowed to "declare inappropriate for preservation an entire set of electronic . . . documents generated by high-ranking officials like Gina McCarthy over a multi-year period." Am. Compl. ¶ 8 (internal quotation marks omitted).

Relatedly, CEI alleges that EPA failed to notify the Archivist of the potential loss or destruction of federal records, as required by FRA. *Id.* ¶ 12. CEI avers that EPA Administrators had knowledge of the destruction of federal records, as they were the individuals primarily responsible for the destruction of text messages. *Id.* ¶ 11 ("Ms. McCarthy . . . was the official charged with . . . ensuring that recordkeeping laws were complied with, and therefore presumably was aware of the propriety and implication of destroying the sole copies of her own correspondence."); *id.* ¶ 12 ("[A]s Ms. McCarthy was the responsible officer as well as the party destroying her own correspondence, EPA has been aware of this practice for several years . . . ."). Accordingly, CEI requests that the Court issue 1) a declaratory judgment that EPA has a duty to preserve text messages, 2) an injunction against EPA to prevent the continued disposal of all text messages, and 3) a writ of mandamus compelling the Agency to preserve its text message communications.[6]

EPA moved to dismiss CEI's Complaint on January 3, 2014, arguing that CEI has no right to judicial relief for its claim that EPA failed to comply with record-keeping guidelines.

---

[6] CEI also requests reasonable attorney fees and costs against the United States pursuant to 5 U.S.C. § 552(a)(4)(E). EPA does not move to dismiss this Count of CEI's Complaint, and accordingly, the Court will not address it in this Opinion.

To the extent CEI's Complaint could be construed as alleging that EPA's record-keeping guidelines are arbitrary and capricious, EPA maintains that the claims must fail because CEI has not identified any specific guidelines for judicial review. EPA further contends that mandamus is not warranted on these facts.

Before the parties completed briefing on EPA's motion to dismiss, CEI filed a motion for leave to file an Amended Complaint. CEI sought leave to amend its Complaint, "in an abundance of caution," to clarify that it also challenges EPA's alleged non-compliance with statutory provisions requiring the head of the Agency to notify the Archivist of any violations of FRA. Mot. to Amend [Dkt. 13] at 2. EPA's motion to dismiss was fully briefed on February 27, 2014, before the Court ruled on CEI's motion for leave to file an Amended Complaint. The Court granted CEI's motion for leave to file on March 14, 2014, and directed that all briefing would be applied to the Amended Complaint. *See* Mar. 14, 2014 Order [Dkt. 17] at 2. CEI filed its Amended Complaint the same day.[7]

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A complaint must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotation marks omitted). Although a complaint need not include detailed

---

[7] CEI filed a Notice of Subsequent Factual Development on June 30, 2014, which highlighted recent articles in which Administrator McCarthy allegedly "admitted that work-related emails may have been illegally discarded" in response to questioning from the House Oversight Committee. *See* Notice of Subsequent Development [Dkt. 19] at 1. Because the instant motion challenges the sufficiency of CEI's Complaint and because the underlying truth of the cited articles is not judicially noticeable material, *see* Fed. R. Evid. 201(b), the Court will not consider these "subsequent factual developments" on the pending motion to dismiss.

factual allegations, a plaintiff's obligation to provide the grounds for its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Id.* at 570. A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Id*. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). When a document is referenced in a complaint and is central to a plaintiff's claim, the court may consider the document without converting the motion to dismiss into one for summary judgment. *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).

### III. ANALYSIS

EPA challenges the legal sufficiency of CEI's allegations under FRA, FOIA, the Administrative Procedure Act (APA), 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361. In opposition, CEI reasserts its right to relief for certain APA and FRA claims, but omits any discussion of the other alleged statutory bases for relief. For the reasons set forth below, the

Court will grant EPA's motion to dismiss, except for one claim arising under the APA and CEI's request for mandamus relief.[8]

   A. **Federal Records Act**

CEI alleges that EPA has engaged in a "pattern, practice, and ongoing policy of destroying, . . . not preserving, and/or allowing . . . employee-correspondent[s] to unilaterally destroy the Agency's sole copy of a class of records," *i.e.*, text messages. Am. Compl. ¶ 42. CEI contends that this practice violates FRA, and requests a declaratory judgment that EPA has a duty to preserve text messages transmitted on EPA devices, and that EPA violated that duty by destroying text message records. CEI also requests injunctive relief to prevent the continued destruction of any text messages qualifying as federal records. EPA moves to dismiss all claims under FRA on the ground that the federal record-keeping statute does not provide a private right of action.

In *Kissinger v. Reporters Committee for Freedom of the Press*, the Supreme Court explained that FRA establishes only one remedy for the improper removal of a "record" from the agency: "The head of the agency is required . . . to notify the Attorney General if [she] determines or 'has reason to believe' that records have been improperly removed from the agency." 445 U.S. 136, 148 (1980) (quoting 44 U.S.C. § 3106). Based on this enforcement scheme, the Supreme Court held that FRA does not include an express or implied private right of action. *Id.* This precedent is clear that private litigants cannot state a claim for legal relief under FRA.

---

[8] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under federal law. Venue is proper under 28 U.S.C. § 1391(e)(1) because EPA is an agency of the United States and a substantial part of the events or omissions giving rise to CEI's claims occurred in the District of Columbia.

CEI's allegations under FRA fall squarely within *Kissinger*'s prohibition. CEI alleges that EPA Administrators have not complied with FRA's enforcement scheme, as they have failed to notify the Archivist of continued record-keeping violations of the statute. *See* Am. Compl. ¶ 68 ("The knowledge on the part of the Administrator triggered the obligation under [FRA] to notify the Archivist of the United States and the Attorney General, in order to recover those records destroyed."). But CEI cannot state a claim under FRA for an agency's records destruction decisions or its compliance with FRA's enforcement scheme. *Kissinger*, 445 U.S. at 148; *see also Armstrong v. Bush (Armstrong I)*, 924 F.2d 282, 293–94 (D.C. Cir. 1991) (instructing that "agency personnel, not the court, will actually decide whether specific documents . . . constitute 'records'" and can be destroyed consistent with FRA). Because that is precisely what CEI alleges here, the Court will dismiss all claims under FRA as beyond the scope of judicial review.[9]

### B. Administrative Procedure Act

In the alternative, CEI alleges that EPA's destruction of text messages is arbitrary and capricious agency action under the APA. For its part, EPA challenges CEI's right to judicial review under the APA as well, maintaining that a private plaintiff may only seek judicial review as to whether an agency's formal record-keeping guidelines comply with FRA.

In *Armstrong I*, the D.C. Circuit distinguished between APA review of an agency's record-keeping guidelines and specific challenges to an agency's disposal determinations. 924 F.2d at 297. While the Circuit held that judicial review extends to the former, it emphasized that judicial review does not apply to the latter because it would "clearly contravene [FRA's] system of administrative enforcement to authorize private litigants to invoke

---

[9] To the extent CEI requests review of EPA's record-keeping guidelines rather than its actual records disposal decisions, the Court addresses those allegations below. *See infra*, Section III.B.

federal courts to prevent an agency official from improperly destroying or removing records." *Id.* at 294. Thus, *Armstrong I* distinguished between reviewable challenges to an agency's record-keeping guidelines under the APA, and unreviewable challenges to the agency's day-to-day implementation of its guidelines.

This legal distinction does not warrant cursory dismissal of CEI's claims. The Amended Complaint alleges that "EPA's *pattern, practice, and ongoing policy* of destroying . . . the Agency's sole copy of a class of records . . . violates the Federal Records Act . . . ." Am. Compl. ¶ 42 (emphasis added). CEI also seeks a court order requiring EPA to disclose "how it came to design and implement *a system* whereby absolutely no record of this class of correspondence is preserved." *Id.* ¶ 54 (emphasis added). Thus, CEI alleges that EPA has implemented an unstated policy by which senior staff are allowed to destroy all text messages, including federal records. Put differently, CEI avers that while the Interim Records Management Policy is EPA's official and published guidance, the Agency actually has a concealed policy that controls its records retention process for text messages. Therefore, the Court is called to decide whether or not APA review is limited to an agency's official record-keeping policies, or whether review extends to unstated policies that guide an agency's actual decisions.

CEI alleges that EPA could not possibly have applied its public record-keeping policy and yet destroyed over 5,000 text messages. To the contrary, CEI argues that EPA must have determined that this quantum of communications constituted "nonrecords" according to a policy concealed from public view. To support its allegations, CEI relies on case law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the civil rights statute, 42 U.S.C. § 1983, which recognize that an agency's actual policies may differ from those touted in its published guidance. Opp'n [Dkt. 11] at 2 (citing *Parker v. District of Columbia*, 850 F.2d

13

708 (D.C. Cir. 1988); *Lowery v. Circuit City Stores*, 206 F.3d 431, 446 (4th Cir. 2000); other citations omitted). EPA contends that the *de facto* policy challenged by CEI is nothing more than a collection of destruction determinations made by EPA Administrators. EPA therefore argues that CEI seeks "to obtain review [of] the EPA Administrator's particular actions by bootstrapping this compliance-based claim into a guidelines-based claim." Reply [Dkt. 14] at 4.

The cases cited by CEI demonstrate the weakness of its position. EPA forcefully argues that Title VII and Section 1983 cases require a broad definition of a "policy" because courts are required to assess the agency's underlying compliance in specific factual contexts. *See* Reply at 5 n.2. By contrast, FRA *prohibits* any judicial assessment of agency compliance in specific factual contexts by establishing a detailed enforcement scheme for alleged violations. The Court agrees. Given the circumscribed nature of judicial review under FRA, private plaintiffs cannot rely on the APA to challenge what they are expressly prohibited from challenging under FRA, *i.e.*, an agency's substantive decisions to destroy or retain records.

CEI cannot challenge EPA's decision to destroy text messages by casting its claim as a challenge to an illusory record-keeping policy. While the form of CEI's claim sounds in a cognizable APA claim, the substance of its allegations constitutes a challenge to EPA's records disposal decisions. *See* Am. Compl. ¶ 3 ("Defendant EPA has not provided any of the records responsive to either FOIA request. Instead, it has declared 'no records' exist responsive to either request, because the Agency employees have destroyed them . . . ."); *id.* ¶ 5 ("[T]he texts, which like email are 'created' when sent or received, were destroyed by EPA."); *id.* ¶ 6 ("[U]nlike email[,] none of the thousands of text messages plaintiff requested were in fact preserved, despite many having a facial relationship to EPA's work . . . ."). Moreover, CEI's allegations would require the Court to employ an assumption that federal government officials

14

acted in bad faith, *i.e.*, in contravention of their stated policies and guidance. The D.C. Circuit requires courts to apply the *opposite* presumption, namely, that government officials discharge their duties in good faith. *See Comcast Corp. v. FCC*, 526 F.3d 763, 769 n.2 (D.C. Cir. 2008) (citing *Thomas v. Baker*, 925 F.2d 1523, 1525 (D.C. Cir. 1991)). CEI does not allege facts sufficient to depart from that presumption, as it has not alleged any specific incidents in which EPA Administrators purposefully evaded agency duties under FRA. Therefore, considering the substance of CEI's allegations, the Court will dismiss any APA claim based on EPA's unstated and unverified record-keeping policies for the removal of text messages.

CEI also alleges that EPA Administrators had "actual knowledge of the destruction of the federal records . . . since the previous and current Administrator both directed and carried out the deletion of those records," Am. Compl. ¶ 67, and the Administrators therefore had a duty to notify the Archivist and the Attorney General of the statutory violations. Administrators Jackson and Administrator McCarthy did not notify the Archivist or the Attorney General of any possible FRA violation. Thus, CEI contends that EPA's "failure . . . to take remedial action . . . despite clear statutory mandates is actionable under the APA." *Id.* ¶ 70.

*Armstrong I* is controlling here. That decision by the D.C. Circuit explained that while judicial review is precluded under FRA, "it would not be inconsistent with *Kissinger* or the FRA to permit judicial review [under the APA for] the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General." *Armstrong I*, 924 F.2d at 295. Instead, the Circuit noted that "judicial review of the agency head's and Archivist's failure to take enforcement action reinforces the FRA scheme by ensuring that the administrative enforcement and congressional oversight provisions will operate as Congress intended." *Id.* The D.C. Circuit also cited FRA provisions which left "*no* discretion to determine which cases to

15

pursue," *id.* (emphasis in original), and therefore found that claims alleging non-compliance with FRA's enforcement scheme were actionable under the APA. CEI adequately alleges that EPA "fail[ed] to take action in compliance with the [FRA]," Am. Compl. ¶ 71, and seeks to compel the Agency to comply with its statutory mandate. EPA responds that not all text messages necessarily constitute federal records, and therefore CEI has failed to state a claim for failure to notify the Archivist. But it is implausible that EPA Administrators would not have suspected the destruction of *any* federal records with the removal of over 5,000 Agency text messages. Because CEI is entitled to the benefit of all reasonable inferences on a motion to dismiss, *see Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008), CEI has adequately alleged that EPA failed to notify the Archivist. EPA also contends that, "even if certain text messages . . . constitute[d] federal records," the Agency was under no obligation to notify the Archivist because "the destruction of those messages would not have been unlawful if the . . . employee properly preserved the text message in another format." Reply at 6. But again, this argument essentially requires CEI to prove the merits of its claim on a motion to dismiss. EPA's arguments require more demanding scrutiny than is warranted at this stage in the proceedings. Accordingly, the Court will deny EPA's motion with respect to CEI's APA claim based on the Agency's alleged non-compliance with FRA's enforcement scheme.

### C. FOIA

CEI alleges that EPA has unlawfully destroyed text messages "pursuant to a policy and practice that violates," *inter alia*, "the Freedom of Information Act . . . ." Am. Compl. ¶ 1. Moreover, CEI contends that EPA's record-keeping practices "illegally den[y] the public access to records covered by the Freedom of Information Act," *id.* ¶ 42, and invokes the Court's "equitable powers to enforce the provisions of the FOIA . . . [and] bar future violations

that are likely to occur," *id.* ¶ 56. While the matter is not entirely free from doubt, CEI's Complaint could broadly be construed as raising a claim under FOIA. *See Aktieselskabet AF 21. Nov. 2001*, 525 F.3d at 15 ("In deciding a 12(b)(6) motion, a court construes the complaint liberally in the plaintiff's favor . . . with the benefit of all reasonable inferences derived from the facts alleged." (internal citations and alterations omitted)).

To the extent CEI has, in fact, alleged that EPA violated FOIA by destroying certain text messages, EPA moves to dismiss that claim. It argues that CEI cannot state a claim under FOIA because that statute only speaks to disclosure, not the underlying record-keeping practices that preserve documents for disclosure. EPA further notes that CEI has not alleged that EPA took any unlawful action with respect to the underlying FOIA requests. Accordingly, the Agency seeks dismissal of all potential claims under FOIA.

*Kissinger* distinguished an agency's duties under FRA and FOIA, holding that "[t]he [Freedom of Information Act] does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained." 445 U.S. at 152. Therefore, it has been settled that "only the Federal Records Act, and not the FOIA, requires an agency to actually create records, even though the agency's failure to do so deprives the public of information which might have otherwise been available to it." *Id.* Because FOIA only addresses an agency's *disclosure* requirements and not its *record-keeping* obligations, CEI cannot state a claim for the unlawful destruction of records under FOIA.

In any event, CEI does not oppose EPA's argument regarding the inapplicability of FOIA to this dispute. CEI therefore has abandoned and waived this claim. *See, e.g., CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482–83 (D.C. Cir. 1996); *Jones v. Air Line Pilots Ass'n*, 713 F. Supp. 2d 29, 39 (D.D.C. 2010); *Hopkins v. Women's Div., Gen. Bd. of*

*Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). The Court will dismiss any of CEI's intended FOIA claims.

### D. Mandamus

Finally, CEI requests a writ of mandamus to compel EPA to preserve any text messages related to the Agency's functions, structure, or substantive decision-making. CEI avers that it has a clear right to relief under FRA, EPA has a clear duty to preserve its text messages under FRA, and there is no other adequate remedy for EPA's alleged violations. In opposition, EPA contends that CEI has not adequately alleged the required elements for mandamus relief and has offered no compelling facts to justify this extraordinary remedy.

While CEI requests a "writ of mandamus," the Court broadly construes this request as one for mandamus-type relief, as the writ of mandamus was abolished in the district courts by Federal Rule of Civil Procedure 81. *See* Fed. R. Civ. P. 81(b) ("The writs of scire facias and mandamus are abolished. Relief previously available through them may be obtained by appropriate action or motion under these rules."). Thus, the Court construes CEI's claim as limited to the Mandamus Act, 28 U.S.C. § 1361, which confers jurisdiction on the district courts over actions "in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff."

"Jurisdiction over actions in the nature of mandamus under § 1361, like jurisdiction over the now-abolished petitions for writs of mandamus, is strictly confined." *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005) (internal quotation marks omitted). The "'remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances.'" *Power v.*

18

*Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). As a result, "those invoking the court's mandamus jurisdiction must have a clear and indisputable right to relief; and even if the plaintiff overcomes all these hurdles, whether mandamus relief should issue is discretionary." *In re Cheney*, 406 F.3d at 729 (internal quotation marks omitted).

Despite the stringent limitations on mandamus relief, CEI has adequately alleged an underlying violation of the APA. CEI's Amended Complaint also alleges a right to mandamus relief for its statutory claims. *See* Am. Compl. ¶ 61 ("Plaintiff has a clear right to relief under laws *such as* the Federal Records Act . . . . (emphasis added)). Therefore, it cannot be said at the pleading stage that CEI has no clear right to relief on *any* of its claims. Because mandamus ultimately will be tied to the merits of CEI's allegations, the Court will not dismiss CEI's requested relief. The clarity of CEI's right to relief and the determination of whether mandamus is justified are questions best reserved for an evaluation on the merits. Accordingly, the Court will deny EPA's motion with respect to CEI's request for mandamus relief.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant in part and deny in part EPA's motion to dismiss. The motion will be granted with respect to claims arising under FRA and FOIA, and the APA claim based on EPA's unpublished and unverified record-keeping policies. However, the motion will be denied with respect to the APA claim for EPA's alleged failure to comply with FRA's enforcement scheme and CEI's request for mandamus relief. A memorializing Order accompanies this Opinion.

Date: September 4, 2014

/s/
ROSEMARY M. COLLYER
United States District Judge

19